HANSON, Respondent, v. HARRIS, Appellant.

(184 N. W. 262.)

(File No. 4842.   Opinion filed August 31, 1921.)

1. **Malpractice—Injured Knee—Joint Found Filled With Sero Purulent Pus—Draining of Abscesses, Finding No Fractures, Swelling, Temperature, Reduced, Subsequent Injection of "Beck's Paste" Which Hastened Healing—Stiff Bent Knee— Subsequent Operation by Other Surgeons, Bones Found Infected, "Beck's Paste" in Joint, Knee Straightened, Paste Removed, Knee But Little Used—Whether Former Surgeon Responsible.**

Plaintiff's knee was injured by having a wagon wheel run over it; was badly swollen, inflamed and painful; defendant physician and surgeon removed plaintiff to his hospital, opened the knee joint and found a large cavity filled with sero purulent pus, a number of abscesses having formed about the knee; incision and drainage followed; ascertained there was no bone fracture but joint and bone somewhat infected; knee conditions improved, swelling and temperature being reduced; a few nights after entering hospital was subjected to an injection into joint and cavities of preparation known as "Beck's Paste," a thin salve of one part powdered bismuth and two parts vaseline, applied to hasten healing, which was successful, another later abscess on calf of leg having been opened, drained and healed; plaintiff having been discharged about a month after going to hospital as "cured," knee being nearly stiff and so bent that when standing his toes only would touch ground, he walking on crutches.   Subsequent knee pain was not reported to defendant surgeon but some eight months later he went to another hospital where two other surgeons operated on knee, in which joint necrosis or decay of bones was found to exist, a small quantity of "Beck's Paste" being found therein; plaintiff being thereby relieved of much of the pain, his knee was straightened and by use of brace relieving knee of his weight

he has some use of his leg. Subsequently an X-Ray disclosed some of "Beck's Paste" in knee cavities; later said other physicians removed this paste. All abscesses and sores were healed at time of trial, stiff knee being little used, he being able, with the brace, to get around and perform some labor, his knee however being permanently injured and he being crippled for life. Held, the evidence does not show that condition of plaintiff's leg was caused by careless, unskillful or negligent manner in which defendant had treated the injury.

2. Same—Failure to Restore Limb to Natural Condition and Use, Whether Implying Negligence, Unskillfulness—Physicians and Physicians' Responsibility.

The mere fact that plaintiff's limb was not restored to its natural condition and use does not prove or imply that defendant surgeon was negligent or unskillful; physicians and surgeons not being held responsible for results but only for kind of service rendered (following Dean v. Seeman, 42 S. D. 577;) the implied contract between surgeon and patient not being to restore limb to natural condition but to use degree of diligence and skill ordinarily possessed by average physicians in similar localities with due consideration to state of the art at the time.

3. Same—Failure to Use X-Ray at First Operation on Knee Bone— X-Ray to Discover Broken Bone, Whether Negligence.

No claim being made that defendant surgeon was not capable, competent and skillful, but that he was negligent in his treatment of plaintiff's injured knee in not taking an X-Ray of it at first operation, held, that, evidence showing that purpose of taking an X-Ray is to ascertain facts not ascertainable otherwise; the only fact here claimed as thus ascertainable was whether there was a bone fractured; this being wholly unnecessary, since defendant had opened the joint, inserted his finger and ascertained there was no broken bone; negligence was not shown.

4. Same—Surgeon's Use of "Beck's Paste," Whether Improper Treatment—Paste Used Re Chronic, Not Acute, Abscesses— Successful Use for Healing, Effect Re Liability.

Plaintiff's theory being that defendant surgeon's use of "Beck's Paste" was unnecessary and improper in treating his injured knee, since such preparation is intended for application to and can properly be used only in cases of chronic or tubercular abscesses, and not upon acute abscesses, yet, defendant having used it as necessary to hasten healing of abscesses, which result it accomplished, no evil results followed; so held, notwithstanding surgeon performing the second operation testified that paste he found interfered with knee action, how it so interfered not being shown.

5. **Same—Injured Knee Crooked, Surgeon's Failure to Keep Splint on Leg, Removal of to Facilitate Flexibility—Disregarded Advice to Use Leg, Effect.**

Where plaintiff's contention was that defendant surgeon's failure to keep his injured leg in splints so that when healed the knee would be straight, being based on theory that knee would remain stiff and would be better straight than bent, is unavailing where evidence shows splint was on leg for some time, but that defendant believed knee joint would not remain entirely stiff after healing, so removed the splint; especially in view of defendant's advice to him when he left the hospital (his knee not then being rigid) to use his leg all he could to try to straighten it, which advice he is not shown to have followed, no evidence existing that it would not have straightened with such use.

6. **Same—Complaint of Loose Bones, Evidence Showing None, But Showing Decayed Bone Resulting From Infection.**

While plaintiff complains of loose bone being left in the knee joint, there is no evidence thereof, while evidence does show that the other surgeon's operation discovered decayed bone, the result of joint infection, probably developed after plaintiff left defendant's hospital.

Appeal from Circuit Court, Roberts County Hon. FRANK ANDERSON, Judge.

Action by Iver Hanson, against H. G. Harris, to recover damages for alleged malpractice. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

*Batterton & Bunde, E. J. Turner,* and *Geo. S. Rix,* for Appellant.

*Howard Babcock,* and *C. R. Jorgenson,* for Respondent.

(2) To point two of the opinion, Appellant cited: Dean v. Seeman, 176 N. W. 649; Staloch v. Holm, 100 Minn. 276, 111 N. W. 264.

POLLEY, P. J. Action for the recovery of damages for alleged malpractice. Plaintiff had judgment, and defendant appeals.

Some time during the month of February, 1914, plaintiff was injured by having a wagon wheel run over his right knee. A physician was called, but the knee soon became badly swollen and inflamed and became very painful. About two weeks after the injury defendant was consulted and asked to treat plaintiff for the injur͏ ͏ ͏t was a practicing physician and surgeon,

and owned and conducted a hospital at the town of Wilmot. He caused plaintiff to be removed to his hospital and at once examined the injured knee. At this time the knee appears to have been in a very serious condition. In addition to the swollen and inflamed condition of the knee, plaintiff had considerable fever. Defendant opened the knee joint and found a large cavity filled with what he termed "thin sero purulent pus." The cavity extended a distance of five inches above the knee. A number of abscesses containing pus had formed about the knee. Defendant made four incisions, and drained and cleaned out the abscesses, and applied proper drainage and irrigation. He inserted his finger through the incisions into the cavity of the knee, and ascertained that there was no fracture of any of the bones; but the joint was badly infected, and the bone had become infected to some extent. The treatment of the abscesses by drainage and irrigation was continued, and in a few days the knee showed signs of improvement. The swelling went down and the temperature of the patient was reduced.

This condition continued until about ten days or two weeks after plaintiff entered the hospital, when defendant injected into the joint and into the abscesses and pus cavities about the knee a preparation known as "Beck's paste." From the description of this preparation contained in the record, "Beck's paste" appears to be a thin salve, composed of a mixture of one part powdered bismuth and two parts vaseline. The purpose of this application appears to have been to hasten the healing of the abscesses and incisions that had been made by the defendants, and this result appears to have followed; but soon thereafter another abscess formed farther down on the calf of the plaintiff's leg. This abscess was opened and drained, and proper irrigation applied, and it appears to have soon healed.

Defendant continued to treat the injured member until the 11th day of April, when plaintiff was discharged from the hospital as "cured." At this time plaintiff's knee was nearly stiff, and so bent that, when he stood up, only his toes would touch the ground. All the openings in the leg except the lower one were healed, and that healed soon after, and none of them ever opened again. Both plaintiff and defendant appear to have be-

lieved that so far as possible the leg was cured, and plaintiff appears to have been well satisfied with defendant's services.

When plaintiff left the hospital, he was walking on crutches, and it was not long until he began to feel considerable pain in his knee. He did not report this to defendant, but waited until some time during the following December, when he went to a hospital in Sisseton, where he had two surgeons, Glacier and Peterson by name, operate on his knee. The knee joint was again opened, and it was found that plaintiff had necrosis of the bones of the knee joint, especially the lower end of the femur. In other words, the infection of the joint had extended to the bones and caused the decay of a considerable quantity of the bone. One of the surgeons who performed the operation testified that he found small quantities of "Beck's paste" in the joint. All of the dead bone, together with the particles of paste found in the joint, were removed. This operation appears to have relieved plaintiff of much of the pain that he had suffered theretofore. His knee was straightened, and by using a brace that relieves the knee of his weight he has some use of his leg.

Some months later he had an X-ray picture made of his knee. Nothing was disclosed by this picture that was not already known, except that it showed that in the cavities that had been formed by the abscesses in the muscles about the knee joint some of the Beck's paste that had been injected by the defendant still remained. Later on Drs. Peterson and Glacier again operated on the knee and removed this paste.

At the time of the trial all the abscesses and sores about plaintiff's knee were healed. His knee was practically stiff, and could be used but little, if any. Whether he can get around without the aid of a cane or crutch is not clear from the evidence; but by wearing a brace, that relieves the knee joint of the weight of his body, he can get around and perform some labor. But that his knee is permanently injured and that he is crippled for life is too plain to admit of question.

[1, 2] It is alleged in plaintiff's complaint, and is now contended by plaintiff, that the condition of his leg was caused by the careless, unskillful, and negligent manner in which defendant had treated the injury. The evidence does not sustain these contentions. In Dean v. Seeman, 42 S. D. 577, 176 N. W. 649, we

adopted the rule that is generally followed by the courts: That the mere fact that plaintiff's limb was not restored to its natural condition and usefulness does not prove, nor even imply, that appellant was negligent or unskillful. Physicians and surgeons are not to be held responsible for results, but only for the kind of service rendered by them. In treating a diseased limb:

"The implied contract between the surgeon and patient is not to restore it to its natural condition, but to use that degree of diligence and skill which is ordinarily possessed by the average of the members of the profession in similar localities, giving due consideration to the state of the art at the time."

[3] There is no claim made that defendant was not a capable, competent, and skillful surgeon. But it is claimed that he was negligent in his treatment of plaintiff's injury, in that he did not take an X-ray of plaintiff's knee at the time of the first operation. The undisputed evidence shows that the purpose of taking an X-ray of an injury is to ascertain facts that cannot be ascertained in any other way. The only fact that is claimed could have been ascertained by taking an X-ray in this case is whether there was a fracture of any of the bones in or about the knee joint. But it was wholly unnecessary for that purpose, because defendant had opened the joint, inserted his finger, and ascertained that there was no broken bone. It is alleged in the complaint that plaintiff's "right leg was broken at or near the knee," and numerous references to a "broken bone" are made in respondent's brief; but there is no evidence to sustain such contention, and counsel for respondent admitted on the argument in this court that there was no fracture of any bone, and there is no merit whatever in this contention.

[4] Respondent contends that the use of Beck's paste was unnecessary, and under the circumstances was improper treatment. This contention is based on the theory that Beck's paste is a preparation that is intended to be applied to, and can properly be used only, in cases of chronic or tubercular abscesses, while the abscesses involved in this case were what are known as acute abscesses. But appellant appears to have used it in the exercise of his best judgment that it was necessary to hasten the healing of the abscesses about the knee. That it accomplished this result there can be no possible doubt, nor is there any evidence that it

had any evil results. It is true that after the paste was injected into the abscesses about the knee joint another abscess formed farther down on the leg; but there is no evidence that this was the result of the use of the paste. The surgeon who performed the second operation testified that he found some of the paste in the knee joint, and that it interfered with the action of the knee, but just how it could interfere with the action of a stiff knee does not appear. No witness who testified in the case ventured the opinion that there was anything that could have been done after defendant took charge of the case that would have prevented the knee from being stiff the remainder of plaintiff's life.

[5] It is contended that, while plaintiff was under defendant's care at the hospital, he should have kept plaintiff's leg in splints, so that when it healed the knee would have been straight. This is on the theory that the knee would be entirely stiff, and that it would be better to have it straight than to be bent. The evidence shows that there was a splint on the leg for some time after plaintiff was in the hospital; but it appears to have been the belief of defendant at that time that the knee joint would not be entirely stiff after it healed, and the splint was removed. It appears from the testimony of plaintiff himself that when he left the hospital his knee was not rigid, that he could pull it back a little, and that defendant told him to go home and use his leg all he could, and try to straighten it out. There is no evidence, however, that he followed these directions, and no opinion was expressed by any witness that the leg would not have straightened out, if such directions had been followed.

[6] Frequent mention is made in respondent's brief of loose pieces of bone having been left in the knee joint. This contention is wholly without merit. There is no evidence that there ever were any loose pieces of bone in the joint. The surgeon who operated on the joint eight months after plaintiff left defendant's hospital testifies that he did not find any loose bone in the joint, but that he did find decayed bone about the joint. This condition was the result of the infection in the joint, and so far as the evidence shows developed after plaintiff left defendant's hospital.

After a thorough analysis of the testimony in this case, we fail to find any facts that warrant the conclusion that the defendant was negligent or unskillful in his treatment of plaintiff's

injury, or that any other course of treatment known to the medical profession would have produced better results. Plaintiff has suffered much pain, and no doubt will continue to suffer great pain, and much inconvenience from the condition of his leg. No doubt his condition appealed strongly to the sympathies of the jury, as it certainly does to the sympathies of the court; but this does not justify the verdict against defendant.

The evidence does not justify a verdict against defendant, and it is not nceessary to consider the assignments based upon the admission of immaterial evidence or the refusal to give requested instructions.

The judgment and order appealed from are reversed.