WARWICK, Respondent, v. BLISS, Appellant.

(195 N. W. 501.)

(File No. 5045. Opinion filed October 26, 1923.)

1. **Physicians and Surgeons—Negligence—Damages—Care Required of Physician.**

   That a broken bone did not stay in place after it had been set, and did not grow together in the usual length of time, does not necessarily prove that the physician was negligent or unskillful, as the implied contract is not to restore the limb to its natural condition, but to use that degree of diligence and skill ordinarily possessed by average members of the profession in similar localities, giving due consideration to the state of the art at the time.

2. **Physicians and Surgeons—Negligence—Jury—Evidence—Evidence Held to Require Directed Verdict.**

   In an action against physician for negligence in setting bone, **held**, that there was no evidence from which carelessness or negligence could be inferred, and that the court should have directed a verdict for defendant at the close of plaintiff's case.

**3.  Trial—Rebuttal—Malpractice—Admitting Evidence on Rebuttal in Support of Main Case and Refusing to Postpone Trial Held Error.**

In malpractice case, where a specialist was called on rebuttal for the purpose of establishing plaintiff's main case, the court erred in permitting him to testify, where there was no excuse for not calling him when putting in the main case, and where defendant had excused his witnesses, and the court further erred in refusing to postpone the trial to enable defendant to recall his witness.

**4.  Physicians and Surgeons—Negligence—Evidence Held Insufficient to Show Negligence.**

In a malpractice action, evidence held insufficient to support a finding of negligence in setting and treating a broken leg.

**5.  Physicians and Surgeons — Negligence — Surgeons May Follow What Is Considered Proper Practice.**

Physician was not liable for not having followed proper practice in setting a leg where he followed what was considered the proper practice of the profession under like circumstances in his vicinity, and acted upon his best judgment.

Appeal from Circuit Court, Minnehaha County; Hon. L. L. Fleeger, Judge.

Action by John A. Warwick against P. D. Bliss. Judgment for plaintiff, and defendant appeals. Reversed.

See, also, 45 S. D. 388, 187 N. W. 715.

*George J. Danforth,* of Sioux Falls, for Appellant.

*Kirby, Kirby & Kirby,* of Sioux Falls, for Respondent.

Appellant cited: Houghton v. Dickson (Cal.), 155 Pac. 128; Williams v. Poppleton, 3 Ore. 139, 147; Moore v. Teed, 2 Cal. 190; Langford v. Jones, 18 Ore. 307; Wood v. Barker (Mich.), 13 N. W. 577; Friend v. Kramer, Ann. Cas. 1914A, 272; Farrell v. Haze, 122 N. W. 197; Ewing v. Good, 78 Fed. 442; Wurdeman v. Barnes (Wis.), 66 N. W. 111; Hills v. Shaw, 137 Pac. 229; Conzine v. Moore (Iowa), 14 N. W. 424; Boner v. Nicholson (Mo.), 161 S. W. 309; Hubes v. Faber (Wis.), 157 N. W. 519.

Respondent cited: Drew v. Lawrence, 37 S. D. 620; Clinkscales v. Granite Co., 38 S. D. 205; Hepner v. Wheatly, 37 S. D. 632; Irwin v. Seeman, 42 S. D. 574; Hickerson v. Neely et al (Ky.), 54 S. W. 842; Granger v. Still, 85 S. W. 1114; Leisenring v. La Croix (Neb.), 94 N. W. 1009.

POLLEY, J.  The defendant in this action, in company with one Dr. Batterton, is a practicing physician and surgeon in the town of Colton. On the 26th day of March the plaintiff, a farmer living in the vicinity of Colton, suffered a fracture of the bones of his left leg between the knee and the ankle. A telephone message was sent to the office of said physicians requesting the defendant to come immediately and attend to the said injury. Defendant was absent from Colton at the time the message was sent, and Dr. Batterton responded to the call. On arriving at plaintiff's home and learning the nature and extent of plaintiff's injury he decided that plaintiff's case could not be properly cared for in the country, and caused plaintiff to be taken to Colton and placed in a room in the building in which said physicians had their office. In the meantime defendant had been communicated with, and when plaintiff reached Colton defendant was there, and with him was Dr. Zetlitz, a practicing physician and surgeon from Sioux Falls. After the proper preparation of plaintiff's injured leg the three physicians proceeded to set the broken bones, and placed upon the leg what is commonly known as a "plaster cast." This was done about 8 o'clock in the evening of March 26th, and some three or four hours after the injury occurred. The cast extended from about six inches above the knee down to the ankle. Considerable swelling took place in the leg and ankle. The cast became so tight as to cause considerable pain, and on the first or second day after it was put on, in order to relieve the pain, the cast was split a short distance at the lower end. The swelling and the pain continued, and on the 3d day of April the cast was taken off. On the 5th day of April plaintiff was taken to the office of Dr. Zetlitz in Sioux Falls, where an X-ray picture of the injury was taken. This picture revealed the fact that the ends of the bones had slipped out of place, and that it was necessary to set them again. Plaintiff was taken back to Colton, and defendant and Dr. Batterton reset the fracture, and applied what is known as an ambulatory splint. From this time defendant had no further connection with the case. The injury continued to be very painful, and on the 12th day of April plaintiff was taken to a hospital in Dell Rapids, where another X-ray of the injury was taken. This picture showed that the ends of the broken bones were again out of place. The case was then turned over to Dr. Grove of Dell Rap-

ids, and Dr. Batterton had no further connection with it. Dr. Grove made an incision in the leg at the point of injury, and on cutting down to the bone found that there was a portion of the periosteum and some of the muscle of the leg between the ends of the broken bones. Dr. Grove removed this periosteum and muscle from between the bones, placed the fragments of the bones in apposition, and then attached a Lane's plate to the bones to hold them in place. The bones did not knit, and some time—the evidence does not show just when—thereafter osteomyelitis, a disease of the bone, developed in the bones of the ankle. Later on gangrene deveolped, and amputation became necessory. Plaintiff brought this action against defendant alone to recover damages for the loss of his foot.

In his complaint plaintiff alleges as the basis of his right of recovery that defendant was incompetent, that he was negligent in his manner of treating plaintiff's injured leg, and that while he was attending to plaintiff's injury he carelessly and negligently abandoned plaintiff, leaving a plaster cast improperly upon plaintiff's injured limb. Verdict and judgment were for plaintiff, and defendant appeals.

[1]   In the cases of Dean v. Seeman, 42 S. D. 577, 176 N. W. 649, and Irwin v. Seeman, 42 S. D. 574, 176 N. W. 652, and again in Hanson v. Harris, 44 S. D. 457, 184 N. W. 262, this court followed what appears to be the uniform rule in all the states:

"That the mere fact that the broken bone did not stay in place after it had been set and did not grow together in the usual length of time does not necessarily prove, nor even imply, that appellant was negligent or unskillful. Physicians and surgeons are not to be held responsible for results, but only for the kind of service rendered by them. * * * 'In treating a broken or diseased limb, the implied contract between the surgeon and patient is not to restore it to its natural condition, but to use that degree of diligence and skill which is ordinarily possessed by the average of the members of the profession in similar localities, giving due consideration to the state of the art at the time.'" Miller v. Toles, 183 Mich. 252.

And in 3 Wharton & Stille's Med. Juris. § 473, the rule is stated as follows:

"A physician attending a patient is bound by his contract, unless otherwise provided, to possess and to bestow upon the case such reasonable and ordinary skill and diligence as physicians practicing in similar localities and in the same general line of practice ordinarily exercise in like cases, time and locality being taken into account. And he is bound to use his best judgment in all cases of doubt as to the best mode or course of treatment. And he is under a like obligation to bring to his aid such obtainable remedies and appliances as discovery and experience have found to be the most appropriate and beneficial in aiding recovery. These rules apply to surgeons as well as physicians. And the care and skill of a surgeon may be as much involved in the selection of the point of the amputation or operation as in the manner of its performance. And so of the selection of the time to operate. And one who accepts employment as a specialist must have that degree of skill and knowledge which is ordinarily possessed by physicians engaged in that specialty, and must exercise his best judgment in the application of his skill and in the use of ordinary care. The physician or surgeon does not undertake, however, to use the highest possible degree of skill. He merely undertakes to exercise a fair, reasonable, and competent degree, such as physicians and surgeons ordinarily exercise in the treatment of their patients, and such as will enable them to treat the case in hand understandingly and safely; though something more is necessary than mere average merit."

"The question as to what constitutes reasonable and ordinary care and skill upon the part of a physician or surgeon must be determined in each case from all the circumstances; and there is no substantial difference in the words 'ordinary' and 'reasonable' in defining the care and skill required. Skillful treatment by a physician or surgeon includes diligence and care, as well as the use of skill, and the exercise of proper judgment in informing the patient as to his ailment and condition. And ordinary care and skill include such care and skill in determining when attendance may be safely and properly discontinued. And the duty of the physician extends not only to diagnosis and treatment, but also to proper instructions as to the patient's comfort and management. But the care, diligence, and skill required relate to professional duties, and not to nursing and providing necessaries, etc.

He is not bound to nurse his patients and provide for them, though he is required to instruct others how to do it. And a physician or surgeon is not chargeable with ignorance of a case if he prescribes for or treats it properly and correctly. If a patient is delirious, and cannot be made to understand the necessity of the proposed treatment, his physician or surgeon may co-operate with the patient's immediate family, and resort to reasonable force."

"The standard of ordinary care of physicians and surgeons may vary even in the state according to the greater or less opportunities afforded by the location for observation and practice, and it has been held by a number of cases that a physician is required to use no more skill than that of the physicians of his neighborhood, if there be others, presumably of average ability. But the rule has also been stated to be that the degree of knowledge, skill, and care required of a physician or surgeon is that which is ordinarily possessed by those practicing in similar localities, and is not necessarily limited to that which is in fact exercised in his particular locality. And a physician practicing in a small village who undertakes to perform a difficult operation is bound to possess only that skill and ability which physicians and surgeons of ordinary ability and skill practicing in similar localities with opportunities for no larger experience ordinarily possess; he is not bound to possess that high degree of art and skill possessed by eminent physicians and surgeons practicing in large cities." 3 Wharton & Stille's Med. Jris. § 476.

"A physician is not required to exercise the highest degree of skill and diligence possible, in the treatment of an injury or disease, unless he has by special contract agreed to do so. In the absence of such special contract, he is only required to exercise such reasonable and ordinary skill and diligence as are ordinarily possessed and exercised by the average of the members of the profession in good standing, in similar localities and in the same general line of practice, regard being had to the state of medical science at the time." Dye v. Corbin, 59 W. Va. 266, 52 S. E. 147.

Numerous other authorities along this same line might be cited, but this is sufficient to illustrate what the established rule on this question is.

When plaintiff rested defendant moved for a directed verdict upon the following among other grounds:

"For the further reason that it now appears by the undisputed evidence in this case and the evidence offered by the plaintiff himself, by which the plaintiff is bound, that the defendant, Dr. Bliss, in treating the plaintiff's broken leg, used the customary and ordinary method of treatment and treated him in the manner in which such fractures are ordinarily treated, that there is no evidence of any kind of negligence or want of skill, and that it appears by plaintiff's own evidence an unusual condition existed in this case, which unusual condition was the presence of the periosteum and muscle between the fractured bones which could not be discovered by an external examination or by an X-ray photograph, and that such was the reason for the misplacement of the fractured bones of the plaintiff, and that it also appears by plaintiff's own evidence that after the plaintiff left defendant's care and was in the hospital at Dell Rapids an infection developed which was found by the doctor testifying for the plaintiff to be an infection or osteomyelitis, which was the cause that made the amputation of plaintiff's limb necessary, and that that was a matter which could not be discovered by the exercise of ordinary skill and care on the part of any physician or on the part of the defendant, and that there is a total failure of proof to establish the allegations of negligence as set forth in the complaint; the only allegations of negligence being the placing of a cast improperly upon the plaintiff's limb in the wrong place, and the other allegations being an allegation of abandonment, and for the further reason that there is no evidence of negligence, malpractice or mistreatment of any kind or character—on the contrary, the plaintiff's own evidence establishes the fact that the defendant did exercise ordinary care and skill and treated the plaintiff in the way that fractures of broken bones are customarily treated."

[2] The plaintiff showed by his own evidence that in cases of injuries such as plaintiff's injury appeared to be, the usual and ordinary practice among reputable physicians and surgeons in that vicinity was to apply a cast, just as was done in this case. It is true plaintiff claims the cast was too tight. It is apparent, however, that if it was too tight it was so because of excessive swelling of plaintiff's leg after the cast was put on; but the evidence

shows that when this fact became apparent the cast was split at the lower end so as to relieve the pressure, and on the ninth day after the injury it was taken off. It was not shown that it was put on tighter than casts usually are, or that it was tighter than was necessary to hold the fragments of the broken bones in place, or in fact that it was sufficiently tight to hold the bones in place. There was no evidence at all from whcih carelessness or negligence could be inferred, and the court should have directed a verdict for defendant.

[3] After this motion was denied defendant put in his evidence and rested. Plaintiff then called to the stand Dr. John E. Dewar, from Minneapolis, who, on preliminary examination, showed himself to be a consulting surgeon and bone specialist of wide observation and many years' experience in several of the larger cities of this country. He was called, not for the purpose of rebuttal, however, but for the purpose of establishing plaintiff's main case. Defendant objected to this testimony on the ground that it was not rebuttal, and on the further ground that defendant had excused his witnesses, and would not be able to meet this new evidence at that stage of the trial. The objection was overruled. Defendant then requested that the trial be postponed in order that he might have an opportunity to get his witnesses back. This request was denied, and both ruling are assigned as error. The court erred to defendant's prejudice in both these rulings. A trial court is vested with a broad discretion in the matter of the order of introducing evidence, and in reopening a case for the purpose of putting in something that had been overlooked, or to take the testimony of a witness who could not be procured in time to testify in the regular order. But no such excuse was shown to exist in this case. No reason whatever was shown why this witness could not have been present and testified while plaintiff was putting in his evidence on the main case and before defendant had excused his witnesses.

[4] But with the testimony of Dr. Dewar in the record the evidence is not sufficient to support a verdict for plaintiff. The undisputed testimony on the part of both plaintiff and defendant is to the effect that the use of a plaster cast as applied by defendant to plaintiff's injury was the usual and ordinary way of treating an injury of that character in that vicinity. It was shown by

all the medical experts who testified on both sides of the case, except Dr. Dewar, and he did not pretend to know what the practice was in South Dakota, that the use of a cast was the proper practice in such cases. It was also shown by undisputed evidence that in the absence of complications the use of a cast nearly always proves successful. In this case there were complications. In the first place there was the periosteum and muscle between the ends of the bone. This was unknown to the defendant, and the evidence shows that that was a condition that could not be ascertained by an external examination nor by the use of the X-ray. And in the second place there was the condition that caused osteomyelitis. Whether this resulted from a blow on the ankle at the time of the accident or from other causes is not shown. It had not developed nor was any cause for it known during the time defendant or Dr. Batterton was connected with the case.

[5] Dr. Dewar testified that the use of a cast was not the proper practice under circumstances shown to exist at the time the cast was put on. He did not say, however, what would have been the proper practice, nor is this the test of defendant's liability. It is sufficient that he followed what was considered the proper practice of the profession under like circumstances in his vicinity, and that he acted upon his best judgment.

"In cases like this the court and jury do not undertake to determine what is the best mode of treatment or to decide questions of medical science upon which surgeons differ among themselves." Stalock v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L. R. A. (N. S.) 712.

It must be remembered that surgery is not an exact science. Similar treatment of apparently similar injuries of different individuals does not produce the same effect. There is always the physical vigor and nervous condition of the patient to be reckoned with, to say nothing about the unknown complications that may exist; as, for instance, the muscle and periosteum between the bones and the cause that afterwards produced osteomyelitis in the present case.

No attempt was made at the trial to sustain by evidence the allegation of incompetence or want of skill on the part of the defendant, or that he did not possess the same skill and ability as

the average member of the profession in good standing engaged in the same line of practice in similar localities.

Upon the question of abandonment plaintiff testified that he requested defendant to give the case his personal attention, and that defendant agreed to do so. The evidence shows that in conjunction with Dr. Batterton defendant did give the case his personal attention until about the time plaintiff was taken to Sioux Falls. At this time defendant, because of ill health, was obliged to leave Colton; but plaintiff was left in charge of Dr. Batterton, who continued to treat plaintiff's injury as he had been doing before defendant left. To this arrangement no objection was made by plaintiff, and it is not shown nor claimed that Dr. Batterton is not equally as capable and skillful as defendant, nor was any attempt made to show that plaintiff suffered in any manner whatever because of the change. It appears from the testimony of the medical witnesses who testified for both plaintiff and defendant that in treating simple fractures in the manner that defendant treated plaintiff in this case amputation does not become necessary in more than about one case in 100, and that in cases where amputation does become necessary it is because of complications of some kind that are not apparent and not ascertainable from an external examination. It may be fairly inferred from the record in this case that, had it not been for the complications afterwards found to exist, plaintiff's injury would have yielded to defendant's treatment, and a cure have been effected within the usual length of time. It may be, too, that, had defendant made an incision in the injured limb at the point of the fracture, as was afterwards done by Dr. Grove, and removed the substance from between the ends of the broken bones before they were set, they would have united in the usual length of time. On the other hand, it may be possible that the blow or other injury to the bone that afterwards brought on the osteomyelitis was such as to have prevented a cure in any event. But this is all a matter of speculation, and the fact remains that defendant followed the usual and ordinary course in such cases in his vicinity, and the course that ordinarily and usually produces a cure.

The judgment appealed from is reversed.

Note.—Reported in 195 N. W. 501. See, Headnote (1), American Key-Numbered Digest, Physicians and surgeons, Key-No. 14(3),

30 yc. 1575, 1570; (2) Physicians and surgeons, Key-No. 18(9), 30 Cyc. 1588; (3) Trial, Key-No. 63(2), 38 Cyc. 1355, 1358; (4) Physicians and surgeons, Key-No. 18(8). 30 Cyc. 1587; (5) Physicians and surgeons, Key-No. 14(2), 30 Cyc. 1575.

On liability of physician or surgeon for failure to follow established practice as to method of treatment, see notes in 37 L. R. A. (N. S.) 836 and L. R. A. 1915C. 595.