John MAGBUHAT and Sandra Magbuhat Special Representatives of the Deceased Minor Child, and John Magbuhat and Sandra Magbuhat, Individually, Plaintiffs and Appellants.

v.

Richard A. KOVARIK, M.D., Norman D. Neu, M.D., and Rapid City Regional Hospital, Inc., Defendants and Appellees.

No. 14700.

Supreme Court of South Dakota.

Argued Oct. 21, 1985.

Decided Feb. 19, 1986.

Rehearing Denied March 27, 1986.

**44**

Franklin J. Wallahan, Wallahan Law Office, Rapid City, for plaintiffs and appellants.

William G. Porter of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendants and appellees, Kovarik and Neu.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and appellees, Rapid City Regional Hosp.

FOSHEIM, Chief Justice.

Plaintiffs, John and Sandra Magbuhat (Magbuhats), seek a new trial from a verdict in favor of Defendants, Doctors Kovarik and Neu (Doctors) and Rapid City Regional Hospital (Hospital). We reverse and remand for a new trial.

Magbuhats' baby daughter was delivered by cesarian section approximately eleven and one-half hours after Sandra was admitted to Hospital's labor room. Doctors Kovarik and Neu attended. The baby was soon flown to Denver for specialized care. She died 41 days later after being returned to her home. In this malpractice action, Magbuhats' claim the Rapid City Doctors and Hospital were negligent in monitoring the fetus during birth; in using forceps in an attempted vaginal delivery; and, in delaying delivery by cesarian section.

## I.

Prior to trial, Magbuhats noticed their intent to depose four Denver doctors. Defendants moved to "strike" Magbuhats' notices and to restrict the scheduled depositions to discovery only. Magbuhats' counsel vigorously objected. A hearing was held. The trial court ordered that: (1) Magbuhats supplement their answers to Defendants' interrogatories with information related to the Denver doctors' opinions; (2) Magbuhats' notices to depose the Denver doctors be stricken, vacated, and set aside; (3) deposing of these doctors for trial purposes be postponed pending further court order or agreement of counsel; and (4) Defendants' request to depose the Denver doctors for discovery only [at the times previously scheduled by Magbuhats] be granted. Magbuhats' counsel attended the discovery depositions and cross-examined after which Defendants requested that Magbuhats be assessed part of the deposition costs.[1]

■ Magbuhats contend the trial court improperly sanctioned them by limiting the scope of the depositions to discovery only because they failed to supplement earlier interrogatories with the names and anticipated testimony of these Denver physicians and by denying use of these depositions at trial. We agree.[2]

■ The trial court's order regarding these depositions resulted in the exclusion of relevant evidence. *See Burrington v. Heine,* 88 S.D. 65, 74, 215 N.W.2d 119, 124 (1974). A trial judge has authority to compel discovery and to impose sanctions under SDCL 15–6–37. However, the rule [SDCL 15–6–37(b) ] is designed to compel *production* of evidence and to promote,

rather than stifle, the truth finding process. *See Chittenden & Eastman Co. v. Smith,* 286 N.W.2d 314, 316 (S.D.1979). The severity of the sanction must be tempered with consideration of the equities. *Id.* at 316–17. Less drastic alternatives should be employed before sanctions are imposed which hinder a party's day in court and thus defeat the very objective of the litigation, namely to seek the truth from those who have knowledge of the facts.[3] *Id.* at 316.

■ We cannot fault Defendants for requesting a delay in the taking of the depositions until they were prepared to effectively interrogate. However, our statute no longer distinguishes discovery depositions from depositions for trial purposes. SDCL 15–6–30(a). Thus, at trial any part, or all, of a deposition, so far as it is admissible under the rules of evidence, may be used against any party who was present or represented at the taking. SDCL 15–6–32(a). This includes depositions of out-of-state doctors. SDCL 15–6–32(a)(3)(B).

## II.

The trial court gave the following instruction:

If a specialist brings to his patient care, skill and knowledge, he is not liable to that patient for damages resulting from a bona fide error of judgment of which he may have been guilty. The law requires a specialist to base any professional decision he may make on skill and careful study and consideration of the case, but when the decision depends on an exercise of judgment, the law requires only that the judgment be bona fide. A specialist is not an insurer of a correct-

---

1. The record apparently contains no order specifically addressing these costs. An order submitted by counsel for Defendants was refused after trial.

2. Our dispositive ruling on this issue consequently forecloses the need to consider the prejudicial nature of Hospital counsel's closing comments on the absence of a Denver doctor at trial.

3. Magbuhats' counsel could have eased the problem by postponing his "trial" depositions until Defendants' counsel had utilized the scheduled deposition dates for their general discovery. However, we recognize that rescheduling may have been difficult. It is considerations such as these which the trial court should balance when issuing discovery related orders. *See Chittenden & Eastman Co. v. Smith,* 286 N.W.2d 314, 316–17 (S.D.1979). Whatever the cause, however, relevant evidence was excluded.

ness of his judgment nor the end result of his medical treatment.

This instruction has been considered with approval on previous occasions. *See, e.g., Block v. McVay*, 80 S.D. 469, 475–76, 126 N.W.2d 808, 811 (1964). However, we no longer consider it appropriate. *Shamburger v. Behrens*, 380 N.W.2d 659, 663 (S.D. 1986). It imposes an unrealistic, burden on a plaintiff to prove that the doctor's judgment was rendered with less than good faith. *Id.*

 The negligence standard for doctors is no different than that for other professionals. *See Lenius v. King*, 294 N.W.2d 912, 914 (S.D.1980); Comments to Instruction 105.00 Malpractice, S.D. Pattern Jury Instructions (Civil), v. 1. The issue on which the jury should be instructed in a medical malpractice action is whether the doctor deviated from the required standard of care. That deviation is not conditioned on bad faith or the physician's state of mind at the time of the alleged negligence. *See, e.g.,* Instruction 105.01, S.D. Pattern Jury Instructions (Civil), v. 1. Thus, the instruction, as phrased, was erroneous.

### III.

Magbuhats claim the following instruction precluded the jury from considering relevant testimony from nurses and lay witnesses:

> You are instructed that the alleged negligence of Defendants must be established by the testimony of medical or hospital experts. You must determine the standard of skill and care required of said defendants only from the opinions from those witnesses who have testified as expert witnesses as to such standard.

 The general rule in medical malpractice cases is that negligence must be established by the testimony of medical experts. *Block*, 80 S.D. at 474, 126 N.W.2d at 810. As the above instruction correctly indicates, a verdict in a malpractice case based on inferences stemming from specu-

lation and conjecture cannot stand. *Lohr v. Watson*, 68 S.D. 298, 2 N.W.2d 6 (1942). However, expert evidence is not exclusively required to establish negligence. *Block*, 80 S.D. at 474, 126 N.W.2d at 810; *Fleege v. Cimpl*, 305 N.W.2d 409 (S.D.1981). *See also Lenius*, 294 N.W.2d at 914. For example, if a physician operates on a patient's knee, testimony of lay witnesses could establish that the wrong knee was treated without indulging in speculation and conjecture or knowledge beyond a layperson's realm. The rule does not exclude the opinions and conclusions of lay witnesses on subjects which are within the common knowledge and comprehension of persons possessed of ordinary education, experience and opportunity. *Block*, 80 S.D. at 474, 126 N.W.2d at 810. *Shearn v. Anderson*, 74 S.D. 41, 46–47, 48 N.W.2d 821, 824 (1951). *See also Bennett v. Murdy*, 61 S.D. 471, 479–80, 249 N.W. 805, 809 (1933); *Myrlie v. Hill*, 58 S.D. 330, 236 N.W. 287 (1931).

 This instruction when considered, as it must be with all other instructions,[4] very likely confused or mislead the jury as to the extent and weight they could give the nurses' and the parents' testimony regarding the delivery, condition, and appearance of the baby. *See Fleege*, 305 N.W.2d at 411; *see also Carlsen v. Javurek*, 526 F.2d 202 (8th Cir.1975). It follows that facts capable of observation by persons other than doctors may have been unfairly disregarded by the jury when considering the negligence of the Doctors. *Fleege*, 305 N.W.2d at 411.

### IV.

 Magbuhats contend the trial court erred in excluding certain evidence including, inter alia, Hospital's policy on the integrity of their records, possible alteration of records in this and another case, and the causes and consequences of friction among witnesses. The trial court's evidentiary rulings are presumed correct and we will not seek reasons to reverse.

---

4. *See State v. Fender*, 358 N.W.2d 248, 254 (S.D. 1984).

*Lytle v. Morgan,* 270 N.W.2d 359, 360 (S.D. 1978). The question of whether evidence is immaterial, conjectural or remote must generally be left to the sound judgment and discretion of the trial court. *Durham v. Ciba-Geigy Corp.,* 315 N.W.2d 696, 699 (S.D.1982).

 Clearly, some excluded evidence, such as the alleged Hospital sexual encounter involving two witnesses, was more prejudicial than probative. SDCL 19–12–3. Other evidence, such as the possible alteration of Hospital records in an unrelated case, was found by the trial court to be relevant for a limited purpose and the jury was so instructed. With regard to the claimed alteration of Christina's records, we are not left with a definite and firm conviction that a prejudicial mistake was committed since it appears the trial court allowed discussion of that issue to the extent of its relevancy. *Cunningham v. Yankton Clinic, P.A.,* 262 N.W.2d 508, 512 (S.D.1978).

These or similar evidentiary questions will likely re-emerge at a new trial. *See* SDCL 19–9–7. We accordingly discuss them even though we decline to disturb the rulings of the trial court.

## V.

Magbuhats' argument that the trial court erred in not giving a res ipsa loquitur instruction is also without merit.

 The res ipsa loquitur doctrine is to be utilized only when the facts and demands of justice make its application essential. *Shipley v. City of Spearfish,* 89 S.D. 559, 561, 235 N.W.2d 911, 913 (1975); *see also Van Zee v. Sioux Valley Hospital,* 315 N.W.2d 489, 492 (S.D.1982). It is a rule of law founded on the absence of specific facts which establish negligence. *Malloy v. Commonwealth Highland Theatres, Inc.,* 375 N.W.2d 631, 636 (S.D.1985). A plaintiff may introduce some evidence of specific negligence without waiving his right to res ipsa loquitur instructions. *Id.* at 636. However, when direct evidence tending to establish negligence in support

of the action is introduced, the doctrine becomes inapplicable. *Id.* at 636–37. Here, there was substantial direct evidence presented on the cause and consequences of the baby's injury at birth. *Compare Fleege,* 305 N.W.2d at 414. Res ipsa loquitur instructions were, therefore, properly refused.

## VI.

The remaining issues raised by Magbuhats are passed without discussion since they relate primarily to instructions and discretionary rulings which we cannot presume will reoccur at a new trial. *See* SDCL §§ 15–6–51 and 19–9–3.

· We reverse and remand.

All the Justices concur.

HERTZ, Circuit Court Judge, Acting as a Supreme Court Justice, participating.