**Elston SHAMBURGER and Signe Shamburger, Plaintiffs and Appellants,**

**v.**

**Clayton L. BEHRENS and Rapid City Regional Hospital, Inc., Defendants and Appellees.**

**No. 14626.**

Supreme Court of South Dakota.

Argued Jan. 9, 1985.

Decided Jan. 15, 1986.

Rehearing Denied Feb. 20, 1986.

Donald R. Shultz and Steven J. Helmers of Lynn, Jackson, Shultz & Lebrun, Rapid City, for plaintiffs and appellants.

William G. Porter of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendant and appellee Clayton L. Behrens.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellee Rapid City Regional Hosp., Inc.

MORGAN, Justice.

Plaintiffs Elston and Signe Shamburger (hereinafter Shamburgers collectively or Elston or Signe individually) appeal from a

jury verdict rendered in favor of defendant Dr. Clayton Behrens (Behrens) in a medical malpractice action. Shamburgers also appeal from a summary judgment granted defendant Rapid City Regional Hospital, Inc. (Hospital). We affirm in part, reverse in part, and remand for new trial.

In March of 1980, Elston was hospitalized for diverticulitis.[1] Since this was Elston's third bout with diverticulitis, it was determined that colon surgery was necessary. Behrens performed surgery on Elston on April 24, 1980. Following surgery, Elston's condition continued to deteriorate. Between May 3 and May 5, 1980, Behrens and other physicians at Hospital were unable to pinpoint the cause of Elston's deterioration. On May 6, the doctors concluded that Elston had developed infectious abscesses at the point where his colon had been resected. Further surgery became necessary. On that same day, prior to surgery, Behrens was dismissed by Signe as Elston's surgeon. Signe alleges that she dismissed Behrens because she smelled alcohol on his breath.

Shamburgers later instituted this suit alleging, *inter alia*, negligent preoperative care, failure to adequately inform and disclose, negligent surgery and negligent postoperative care. Prior to trial, the trial court granted summary judgment in favor of Hospital. As noted above, following a jury trial, a verdict was rendered in favor of Behrens on all issues.

Initially, Shamburgers claim the trial court erred in refusing to allow them to place testimony before the jury concerning alcohol on Behrens' breath. Shamburgers contend that the testimony of three witnesses that they smelled alcohol on Behrens' breath was admissible on the issue of Behrens' negligence.

During discovery depositions, Shamburgers elicited testimony from three individuals that on two separate occasions Behrens had alcohol on his breath. A nurse testified that she smelled alcohol on Behrens' breath on May 3. Signe and another physician testified that they detected the odor of alcohol on Behrens' breath on May 6, just prior to Signe's discharge of Behrens. No other testimony was elicited concerning possible alcohol consumption by Behrens. Elston did not detect alcohol on Behrens' breath at any time.

Prior to trial, Behrens filed a motion in limine urging the trial court to issue a protective order barring any mention of alcohol on Behrens' breath during trial. In ruling on the motion, the trial court granted a protective order barring such testimony; finding that any allegation that alcohol consumption affected Behrens' performance was not supported by the facts and that in any event any marginal relevance of the evidence was substantially outweighed by its prejudicial effect.

The rulings of the trial court are presumptively correct; we have no duty to seek reasons to reverse. The party alleging error must show prejudicial error affirmatively from the record. *See Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D. 1976). In making the ruling concerning the alcohol odor, the trial court relied upon SDCL 19–12–3.[2] In reviewing this order, we must determine whether the trial court abused its discretion. *State v. Holland*, 346 N.W.2d 302 (S.D.1984).

The trial court may exclude evidence under SDCL 19–12–3 if the evidence, as admitted, would provide the jury with an undue tendency to decide the case on an improper basis. *See State v. Dunton*, 396 A.2d 1001 (Me.1979) (construing Fed.R. Evid. 403, the statute upon which SDCL 19–12–3 is patterned).

█ The trial court found that there was no evidence that alcohol had any effect on

---

1. Diverticulitis is a disease of the colon caused by inflammation of weak spots or pouches on the inside of the colon wall from bacterial contamination.

2. SDCL 19–12–3 reads:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

diagnosis, treatment, preoperative or postoperative care. The Supreme Court of Montana considered alcohol use in a situation similar to this. *Mydlarz v. Palmer/Duncan Const. Co.*, 682 P.2d 695 (Mont.1984). In *Mydlarz*, the court stated:

Evidence that [Behrens] might have been an alcoholic when the accident occurred may have some probative value regarding the cause of the accident. However, the indirect relevance of this evidence requires us to find that the probative value of the evidence is clearly outweighed by the prejudicial effect on [Behrens]. We find that the jury could have been misled by evidence indicating [Behrens] was an alcoholic and erroneously presume the accident was caused by such disease.

682 P.2d at 704. We agree with the Montana Court that the jury could have been misled concerning alcohol use. The trial court's refusal to admit this evidence did not hamper Shamburgers' efforts to show Behrens acted negligently. Therefore, we conclude the trial court did not abuse its discretion in granting Behrens' motion in limine.

Additionally, Shamburgers claim error in that they were not allowed to discover hospital records concerning Behrens' subsequent hospitalization for alcoholism treatment. Several months after Elston's surgery, Behrens was hospitalized for alcohol treatment. Shamburgers moved to produce the records of this treatment. The trial court denied this motion on two theories: (1) that the records were protected by the patient/physician privilege of SDCL 19-13-7 [3] and (2) that the prejudice caused by exposing the treatment records outweighed their probative value.

First, we note that our discussion concerning the motion in limine could dispense with this issue also. *See Mydlarz, supra.* We believe, however, that the treatment records are also protected by the SDCL 19-13-7 privilege.

■ Shamburgers claim that the exception in SDCL 19-13-11 [4] applies to Behrens' records. We disagree. "[SDCL 19-13-11] creates an exception to the [SDCL 19-13-7] privilege *if* the person for whom such privilege exists asserts a particular physical, mental, or emotional condition as an element of a claim or defense." *Betty J.B. v. Division of Social Services*, 460 A.2d 528, 531 (Del.1983) (emphasis added). Behrens did not assert his physical condition as an element of his defense. He simply denied he was negligent in the care of Elston. It is Shamburgers who attempt to place his physical condition into issue. The exception of SDCL 19-13-11 does not apply, and Behrens' treatment records are privileged under SDCL 19-13-7, and not discoverable.

Shamburgers also contend that the trial court erred in the giving of jury instruction number 7.[5] First, they claim that the

3. SDCL 19-13-7 reads:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

4. SDCL 19-13-11 reads:

There is no privilege under § 19-13-7 as to a communication relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

5. Instruction No. 7 read:

If a board-certified general surgeon brings to his patient care, skill and knowledge of the reasonable board-certified surgeon, he is not liable to that patient for damages resulting from a good faith error of judgment which he may have been guilty. The law requires a board-certified surgeon to base any professional decision he made on skill and careful study and consideration of the case, but when the decision depends upon the exercise of judgment, the law requires only that the judgment be in good faith. A board-certified surgeon is not an insurer of the correctness of his judgment or the end result of his medical treatment.

The fact that an unfortunate or bad condition resulted to Plaintiff Elston Shamburger during the care afforded to him by Defendant Dr. Behrens does not alone prove that Defendant Dr. Behrens was negligent.

"good faith error of judgment" language contained in the instruction confuses the jury by suggesting that no liability will attach to a physician if he acts in "good faith." In this regard, Shamburgers claim the instruction unduly burdens the plaintiff in a medical malpractice suit by requiring him to show the doctor acted in "bad faith."

In examining claims of incorrect jury instructions, the instructions must be considered as a whole to determine if error was committed. *Wheeldon v. Madison,* 374 N.W.2d 367 (S.D.1985). It is the burden of the appellant to show the instruction was prejudicial. *Wheeldon, supra.*

It appears that the basis for the "good faith error of judgment" language in this instruction rests in our decision, *Block v. McVay,* 80 S.D. 469, 126 N.W.2d 808 (1964). In *Block,* we stated:

> "If a physician brings to his patient care, skill, and knowledge, he is not liable to him for damages resulting from a bona fide error of judgment of which he may be guilty. ·The law requires a physician to base any professional decision he may make on skill and careful study and consideration of the case, but when the decision depends on an exercise of judgment, the law requires only that the judgment be bona fide. A physician is not an insurer of the correctness of his judgment[.]"

80 S.D. at 475–76, 126 N.W.2d at 811 *quoting* 41 Am.Jur. *Physicians and Surgeons* § 103. As recently as 1978, we upheld use of a similar instruction. *Fjerstad v. Knutson,* 271 N.W.2d 8 (S.D.1978).

Several courts have chosen to reexamine the use of instructions of this type. *Wall v. Stout,* 310 N.C. 184, 311 S.E.2d 571 (1984); *Ellis v. Springfield Women's Clinic,* 67 Or.App. 359, 678 P.2d 268 (1984) *rev. denied* 297 Or. 228, 683 P.2d 91 (1984); *Logan v. Greenwich Hosp. Ass'n,* 191 Conn. 282, 465 A.2d 294 (1983); *Somer v. Johnson,* 704 F.2d 1473 (11th Cir.1983); *Veliz v. American Hosp., Inc.,* 414 So.2d 226 (Fla.App.1982); *Teh Len Chu v. Fairfax Emergency Medical Associates,* 223 Va. 383, 290 S.E.2d 820 (1982). These courts have held that the use of such terms as "honest mistake," "bona fide error in judgment," or "good faith error in judgment" have no place in a medical malpractice instruction.

> [T]o use such a phrase in a charge upon negligence serves only to confuse a jury by implying that only an error in judgment made in bad faith can be actionable. The central issue in the ordinary negligence case is whether the defendant has deviated from the required standard of reasonable care, not his mental state at the time of the conduct[.]

*Logan,* 465 A.2d at 303.

■ We agree with the reasoning expressed in these cases and hold that the use of such terms as "good faith error in judgment" unduly confuses the issues in a negligence action. Hereafter, such instructions should not be given. Any language to the contrary in prior decisions is expressly overruled. We find the giving of instruction number 7 prejudicial to Shamburgers, and remand for new trial.

Secondly, Shamburgers claim that the second portion of the instruction dealing with the jury's consideration of an "unfortunate or bad condition" constituted prejudicial error. In this regard, Shamburgers rely upon *Hansen v. Isaak,* 70 S.D. 529, 19 N.W.2d 521 (1945). Shamburgers contend instructing the jury that a "bad condition" alone does not prove negligence essentially instructs the jury to disregard Shamburgers' evidence of causation.

In *Isaak, supra,* the plaintiff suffered an injury from a diathermy treatment. The plaintiff was burned from this procedure. This court analogized the case to those of burns resulting from X-ray treatments. The court noted that such cases are often subject to the doctrine of res ipsa loquitur.

■ In *Isaak,* we stated: "The fact, however, that plaintiff was seriously burned is some evidence in itself and may be considered with other facts and circumstances in determining whether or not the injury resulted from negligence." 70 S.D.

at 533, 19 N.W.2d at 522. It is this language which Shamburgers claim must be included in the "unfortunate condition" portion of the instruction. We disagree. As noted above, instructions must be considered as a whole to determine if error was committed. *Wheeldon, supra.* The factual situation in *Isaak, supra,* may have required the additional language. The instruction here did not. Elston's deterioration was not the type of injury such as an X-ray or diathermy burn which in and of itself could be evidence of negligence. As we noted in *Van Zee v. Sioux Valley Hospital,* 315 N.W.2d 489, 492 (S.D.1982):

> The question of duty arises frequently in cases of medical malpractice. Since a physician or surgeon normally undertakes only to exercise the skill and care common to the profession, there usually is not enough in a mistaken diagnosis alone, or the unfortunate choice of the wrong method of treatment, or the kind of accident or undesirable result which happens in spite of all reasonable precautions, to show the necessary lack of skill or care.

*Quoting* Prosser, Law of Torts, pp. 226–228 (4th Ed.1971). *See also Scardina v. Colletti,* 63 Ill.App.2d 481, 211 N.E.2d 762 (1965). We therefore hold that under these facts the trial court did not err by including the "unfortunate condition" language in instruction number 7.

Shamburgers next contend that the trial court erred in allowing Behrens' counsel to cross-examine him during Shamburgers' case-in-chief. As part of Shamburgers' case, portions of Behrens' deposition were read to the jury. Immediately following this, Behrens' counsel was allowed to present the live testimony of Behrens by way of "cross-examination." During this cross-examination, Behrens' counsel made extensive use of leading questions. The trial court allowed cross-examination under the discretionary authority conferred on it by SDCL 15-6-43(b).[6]

Normally, the scope and manner of cross-examination are matters for the trial court's discretion. *State v. Dace,* 333 N.W.2d 812 (S.D.1983); *State v. Richards,* 84 S.D. 376, 378, 171 N.W.2d 808 (1969). The Supreme Court of Iowa has addressed the question of the scope of Rule 43(b). *Matter of Estate of Herm,* 284 N.W.2d 191 (Iowa 1979). In *Herm,* the plaintiff called the defendant as an adverse witness, and defendant's counsel then cross-examined. The Iowa Court concluded that the rule permits such cross-examination, but held that the cross-examination permitted by the rule should not include leading questions.

> The majority rule is that generally where an "adverse" witness is shown to be friendly toward or biased in favor of the cross-examiner the reason for the rule, grounded on the assumed hostility of such witness to the cross-examiner's cause, has ceased to exist and leading questions may not be used in examining such witness.

284 N.W.2d at 197–198.

■ We believe that Rule 43(b) and SDCL 19-14-18, 19-14-19, and 19-14-20 permit cross-examination by a party's own counsel when the party has been called as an adverse witness. We agree, however, with the Iowa Court's reasoning and hold that use of leading questions is not proper in the cross-examination under such circumstances. In light of our reversal and remand on the instruction issue, we need

---

**6.** At the time of trial, SDCL 15-6-43(b) was still included in this state's codified laws and read:

A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief.

In the 1984 Code revision, the South Dakota Code Commission determined that the statute had been superseded by the adoption of SDCL 19-13-1, 19-14-8, 19-14-19, and SDCL 19-14-20 in 1978.

not determine whether cross-examination of Behrens by leading questions constituted prejudicial error.

Shamburgers also claim error in the granting of summary judgment for Hospital. In their claim against Hospital, Shamburgers alleged Hospital was negligent in allowing Behrens to remain on staff. Shamburgers claim Hospital knew or should have known Behrens had a drinking problem and was incompetent, which manifested itself in a problem with Elston's care.

The trial court held that the evidence, viewed in the light most favorable to Shamburgers, presented no evidence to show Hospital knew or had any reason to believe that Behrens was incompetent, and that Hospital had not breached any of its medical staff review procedures.

In South Dakota, separate liability in negligence attaches to a hospital when it has breached its own standards or those available in same or similar communities or hospitals generally. *Fjerstad, supra.* We note that hospital records concerning staff competency evaluations are not discoverable materials. SDCL 36–4–26.1. Shamburgers cannot obtain the records which would show whether or not the hospital considered or knew of Behrens' drinking problems when Hospital considered his staff privileges. The trial court was correct in determining that Shamburgers had presented no evidence pertaining to Hospital's alleged negligence. Mere allegations in the pleadings cannot thwart summary judgment. *Boone v. Nelson's Estate,* 264 N.W.2d 881 (N.D.1978). Once the motion has been made and supported, the nonmoving party has the burden of showing a genuine issue exists for trial. *Olesen v. Snyder,* 249 N.W.2d 266 (S.D. 1976). Trial court found, and we agree, that Shamburgers presented no evidence to support an issue for trial.

Accordingly, the judgment is affirmed in part, reversed in part, and remanded.

All the Justices concur.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not participating.