#25808-a-LSW
**2011 S.D. 89**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *

ESTATE OF ETHANUEL JAMES
HOLZNAGEL, DECEASED, WAYNE D.
HOLZNAGEL and PAULA M. HOLZNAGEL,
PERSONAL REPRESENTATIVES,

    and

WAYNE D. HOLZNAGEL, PAULA M.
HOLZNAGEL, and KATHLEEN F.
HOLZNAGEL, INDIVIDUALLY,              Plaintiffs and Appellants,

    v.

JOHN ERVIN CUTSINGER,

    and

DEPENDABLE SANITATION, INC.,         Defendants and Appellees.

* * * *
APPEAL FROM THE CIRCUIT COURT OF
THE  FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA
* * * *
THE HONORABLE SEAN M. O'BRIEN
Judge
* * * *

JAMES A. MISKIMINS
JAMES D. TAYLOR of
Taylor & Miskimins, PC
Mitchell, South Dakota         Attorneys for plaintiffs
         and appellants.


MICHAEL L. LUCE
ROCHELLE R. SWEETMAN of
Murphy, Goldammer, & Prendergast, LLP
Sioux Falls, South Dakota         Attorneys for defendants
         and appellees.

* * * *

ARGUED OCTOBER 05, 2011


OPINION FILED **12/21/11**

#25808

WILBUR, Justice

[¶1.]     Ethanuel Holznagel and John Cutsinger were involved in a car accident in Mitchell, South Dakota. Ethanuel died from injuries sustained in the accident. Ethanuel's parents, Wayne and Paula Holznagel, who are representatives of his estate, brought a wrongful death action against Cutsinger and his employer Dependable Sanitation (Defendants). A jury trial was held and a verdict was returned for Defendants. The Holznagels appeal the grant of Defendants' motion in limine excluding evidence of Cutsinger's marijuana use. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.]     Ethanuel was a Mitchell High School student. The day of the accident, Ethanuel left school in his car for his lunch break. That same day, Cutsinger was collecting recyclables for Dependable Sanitation with his co-worker and passenger Joe Fisher. Shortly after 11 a.m., Cutsinger approached the intersection of Gamble Street and Eighth Avenue, a "T" intersection not controlled by a stop sign. Cutsinger came to a stop or a near complete stop. He began to make a wide right turn, crossing the imaginary centerline, to proceed west on Eighth Avenue. An investigating officer would later testify that the wide-turn was necessary because of the size of Cutsinger's vehicle and an attached 30-40 foot long trailer carrying the recycling material.

[¶3.]     Before Cutsinger completed the turn, Cutsinger's vehicle collided with Ethanuel's vehicle which was headed east on Eighth Avenue. Evidence at trial suggested Ethanuel was not maintaining a proper lookout for other traffic. Specifically, evidence suggested Ethanuel was operating a portable CD player,

-1-

leaning over the passenger side until just before impact, and speeding. Police and paramedics arrived at the scene within minutes. Ethanuel was unconscious when examined at the scene. Paramedics took Ethanuel to the local hospital where trauma care was provided; however, Ethanuel never regained consciousness.

[¶4.]      Law enforcement found no indication that Cutsinger was under the influence of any intoxicant at the time of the accident. However, according to a police report documenting an interview conducted two weeks after the accident, Cutsinger admitted to marijuana use, including: (1) "probably" smoking marijuana before leaving for work at 6 a.m. on the morning of the accident; (2) smoking marijuana when he returned home after the accident; and (3) previously smoking marijuana approximately 50 times before reporting to work. When Cutsinger was deposed, he denied saying that he probably smoked marijuana the morning of the accident and that he had smoked marijuana 50 times before work, but admitted that he smoked marijuana when he returned home after the accident. In addition to Cutsinger's disputed statements, Cutsinger submitted to a blood and urine analysis following the accident. The toxicology report came back positive for tetrahydrocannabinol (THC), the essential active component in marijuana. However, the report was indeterminate as to whether Cutsinger was under the influence of marijuana when the accident took place and how recently Cutsinger used marijuana prior to the accident.

[¶5.]      Before trial, Defendants moved in limine to exclude (1) any suggestion that Cutsinger was under the influence of marijuana or any other drug at the time of the accident and (2) Cutsinger's prior misdemeanor conviction for marijuana

possession. The Holznagels appeal the order granting Defendants' motion in limine.[1]

## STANDARD OF REVIEW

[¶6.]    The exclusion of evidence pursuant to a motion in limine is subject to the same abuse of discretion standard as other evidentiary rulings. *Joseph v. Kerkvliet*, 2002 S.D. 39, ¶ 7 n.1, 642 N.W.2d 533, 534 n.1. "'An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.'" *St. John v. Peterson*, 2011 S.D. 58, ¶ 10, 804 N.W.2d 71, 74 (quoting *Mousseau v. Schwartz,* 2008 S.D. 86, ¶ 10, 756 N.W.2d 345, 350).

## ANALYSIS

[¶7.]    Although there was discussion at the motion in limine hearing regarding whether Cutsinger's marijuana use was relevant under SDCL 19-12-1 (Rule 401),[2] the crux of the dispute, both at trial and on appeal, is whether Cutsinger's marijuana use, although relevant, is excludable. SDCL 19-12-3 (Rule 403) provides that, "[a]lthough relevant, evidence may be excluded if its probative

---

1.    Defendants argue that the Holznagel's waived any right to appeal on the issue by failing to ask the trial court to reconsider its decision on Defendants' motion in limine and failing to make any offer of proof regarding the excluded evidence. However, because the trial court's ruling at the motion in limine hearing was a final decision on the record, the Holznagel's did not need to renew their objection or make an offer of proof to preserve the claim of error for appeal. *See* SDCL 19-9-3.

2.    SDCL 19-12-1 (Rule 401) defines "Relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[¶8.]    We have previously held that under SDCL 19-12-3 (Rule 403), "[t]he trial court may exclude evidence . . . if the evidence, as admitted, would provide the jury with an undue tendency to decide the case on an improper basis." *Shamburger v. Behrens*, 380 N.W.2d 659, 661 (S.D. 1986). Based on SDCL 19-12-3 (Rule 403) and this Court's decision in *Shamburger,* the trial court excluded the evidence.

[¶9.]    In *Shamburger*, the plaintiff alleged he received negligent medical treatment from the defendant doctor. *Id.* at 661. At trial, the plaintiff sought to introduce testimony of prior occasions where individuals smelled alcohol on defendant's breath while the defendant was at work. *Id.* Besides defendant's prior use of alcohol, there was no evidence that the defendant was under the influence at the time the alleged negligent action occurred. *Id.* The trial court granted defendant's motion in limine "barring any mention of alcohol on [defendant's] breath during trial." *Id.* On appeal, this Court found that granting the motion was not an abuse of discretion because "[t]he trial court's refusal to admit this evidence did not hamper [the plaintiffs'] efforts to show [the defendant] acted negligently." *Id.* at 662.

[¶10.]    The Holznagels argue that the excluded evidence of intoxication in this action is distinguishable from the excluded evidence in *Shamburger*. According to the Holznagels, the evidence the trial court excluded in *Shamburger* sought to demonstrate *habitual* alcohol use, but did not demonstrate that the defendant was

under the influence when the alleged negligent action took place. In contrast, the Holznagels assert that the evidence the trial court excluded here suggests that Cutsinger *actually* used marijuana before and after the accident.

[¶11.] However, even if it is assumed that Cutsinger used marijuana before the accident it would have been when Cutsinger was preparing to leave home for his 6 a.m. shift, at least five hours before the accident occurred. The investigating officer and Joe Fisher, Cutsinger's passenger and co-worker, did not find any indication that Cutsinger was under the influence of marijuana at the time of the accident. Additionally, as in *Shamburger*, the exclusion of prior marijuana use did not prohibit the Holznagel's from showing that it was Cutsinger's negligence which caused the accident. Given the lack of evidence that Cutsinger was under the influence at the time of the accident, and that introducing the evidence of prior marijuana use could have both confused the jurors and led them to presume Cutsinger was negligent, the trial court did not abuse its discretion in determining that the probative value of Cutsinger's marijuana use was outweighed by the danger of unfair prejudice.

[¶12.] Alternatively, the Holznagels argue that Cutsinger's marijuana use should have been presented to the jury for impeachment purposes pursuant to SDCL 19-14-8 (Rule 607), which provides: "The credibility of a witness may be attacked by any party, including the party calling him."

[¶13.] According to the Holznagels, Cutsinger's marijuana use calls into question his credibility because it may have impaired his ability to accurately observe and recall the accident and the events leading up to the accident. However,

the Holznagels did not provide expert testimony or submit evidence of any nature suggesting how marijuana use approximately five hours before the accident and subsequent to the accident would impair Cutsinger's ability to perceive or recall the details of the accident. The Holznagels assert that no expert testimony was necessary and that the evidence should have been admitted "in order to allow the jury to make any appropriate inference" based on its "common sense and life experience." To support their position, Holznagels cite to the Connecticut Supreme Court decision in *State v. Clark*, 801 A.2d 718 (Conn. 2002).

[¶14.] In *Clark*, the Connecticut Supreme Court held that a jury could "consider the effects of marijuana use on a witness' ability to observe and relate events" without "specific testimony addressed expressly to that issue." *Id.* at 724. The court reasoned:

> [T]he unfortunate prevalence of marijuana use, coupled with the substantial effort to educate all segments of the public regarding its dangers, underscores the reality that the likely effects of smoking *five marijuana cigarettes in a short period of time before an incident are within the ken of the average juror.*

*Id.* at 726 (emphasis added).

[¶15.] However, *Clark* is distinguishable. In *Clark*, the jurors were asked to determine the effects of smoking a large amount of marijuana, five cigarettes, during a *short period* of time before the accident. In other words, there was no dispute that the witness was actually intoxicated when the incident took place. In such circumstances, it may be reasonable to ask jurors to draw on their own "common sense" to determine if the witness's "ability to observe and relate events"

was impaired by ingesting a large amount of an intoxicating substance in a short period of time before witnessing an event.

[¶16.]    In contrast, an Illinois federal court addressed the relevancy of marijuana use hours before an incident in determining the "credibility of the parties involved." *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1060 (N.D. Ill. 2009).  In *Mason*, the "[p]laintiff testified that he took 'three to four puffs' of a marijuana cigarette three hours before his encounter with the police." *Id.* at 1055.  Although the plaintiff admitted to marijuana use hours before the incident, there was no evidence plaintiff was under the influence of marijuana at the time of the incident. *Id.*  Defendants sought to introduce expert testimony on the effects of marijuana at the time of the encounter.  *Id.*  Plaintiff moved in limine to exclude all reference to his marijuana use on the day of the incident.  *Id.* at 1054.  The court granted the motion, reasoning that "there [was] no foundation for relevant evidence concerning the influence of marijuana on [p]laintiff.  Plaintiff's admissions during discovery that he smoked a marijuana cigarette on the date of the incident do not come close to providing the necessary foundation to admit such highly inflammatory and prejudicial evidence." *Id.* at 1058.

[¶17.]    Here, as in *Mason*, jurors would have been asked to determine whether Cutsinger's *alleged* marijuana use five hours before the accident affected his ability to accurately observe and recall the accident.  Asking jurors to assess how an intoxicating substance *may* impair one's perception hours after ingestion, without assistance of an expert, differs from asking jurors to assess how actual intoxication impairs perception.  Therefore, the trial court did not abuse its discretion in

determining that the probative value of the evidence was outweighed by the danger of unfair prejudice and granting Defendants' motion in limine.  We affirm.

[¶18.]	GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.