GILBERTSON, Chief Justice
(dissenting).
[¶ 16.] This case involves nothing more than a question of statutory construction. However, the majority's decision today results in serious damage to patient privacy by judicially creating a redaction exception to SDCL 19-19-503, South Dakota’s physician-patient privilege.[7] In doing so, the majority relies on a number of decisions from other jurisdictions that analyze the purpose of their respective privileges rather than the plain meaning of those statutes. Like the cases upon which it relies, the majority’s result-oriented analysis overlooks the primary issue in this case: Whether the plain language of SDCL 19-19-503 applies to redacted patient records. The majority devotes a single, cursory paragraph to this issue. Because the plain language of SDCL 19-19-503 applies to the patient records at issue in this case, and because Wipfs remaining arguments are similarly incorrect, I respectfully dissent. ,
[¶ 17.] .1. Analysis of South Dakota’s physician-patient privilege
[¶ 18.] In determining whether SDCL 19-19-503 applies to redacted patient records, this Court must first examine the plain language of the statute. E.g., Pitt-Hart v. Sanford USD Med. Ctr., 2016 S.D. 33, ¶ 10, 878 N.W.2d 406, 410. Under South Dakota’s physician-patient privilege, “[a] patient [may] refuse to disclose and [may] prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment ... among himself, [his] physician,” and other enumerated individuals. SDCL 19-19-503(b). “A communication is ‘confidential’ if not intended to be disclosed to third persons.... ” SDCL 19-19-503(a)(4). This Court has explicitly and consistently held that a patient’s medical records are- confidential communications within the meaning of the physician-patient privilege. See Shamburger v. Behrens, 380 N.W.2d 659, 662 (S.D.1986) (“[Treatment records are also protected by the [physician-patient] privilege?’); Maynard v. Heeren, 1997 S.D. 60, ¶¶ 7-15, 563 N.W.2d 830, 833-36 (applying physician-patient privilege and exceptions to psychological records of plaintiff-litigant), abrogated on other grounds, Milstead v. Johnson, 2016 S.D. 56, ¶¶ 34-35, 883 N.W.2d 725, 737-38; State v. Stuck, 434 N.W.2d 43, 53-54 (S.D. 1988) (applying physician-patient privilege and exceptions to victim’s medical records); People ex rel. D.K., 245 N.W.2d 644, 647-49 (S.D.1976) (applying physician-patient privilege and exceptions to hospital records of infant).[8] Despite the majority’s *797 attempt to relabel the documents sought in this case as merely “information,” the circuit court ordered the production of medical records belonging to several hundred patients — i.e., confidential communications — unrelated to this litigation.[9] Therefore, as a starting point, the subject of the circuit court’s discovery order is privileged.
[¶19.] In light of the foregoing, the onus is on the majority to demonstrate how under the plain text of SDCL 19-19-503 a confidential communication (e.g., a medical record, see supra ¶ 18) ceases to be either confidential or a communication when redacted. The majority fails to do so. I can only assume that in the majority’s view, the removal of identifying information from a medical record renders what was a “confidential communication” merely a • “communication.” However, as noted above, a communication is confidential “if not intended to be disclosed to third persons[.]” SDCL 19-19-503(a)(4) (emphasis added). The word intend means “[t]o have in mind a fixed purpose to reach a desired objective” or “to have as one’s purpose[.]” Black’s Law Dictionary (10th ed.2014). Thus, in order for redaction to remove the “confidential” quality of a communication, redaction would have to actually create a “fixed purpose” in the mind of the patient to disclose the communication to a third party. But passive assent is not active intent, so even if hundreds of Dr. Altstiel’s patients would passively accept the dissemination of their redacted medical records (assuming they even find out about it), that is a far cry from having a “fixed purpose” of providing their medical information to Wipf. Therefore, under the plain text of SDCL 19-19-508, a medical record is confidential as long as the patient does not- intend to disseminate it, regardless of whether it has been redacted.
[¶ 20.] Instead of explaining how a patient medical record ceases to be a confidential communication under SDCL 19-19-503 when redacted, the majority merely observes that SDCL 19-19-503 “does not address the disclosure of .anonymous, nonidentifying information!!]” Supra ¶ 8. According to the majority, this observation “alone should - end any ‘plain text’ argument.” Supra ¶10 n. 5.[10] Yet, neither does SDCL 19-19-503 specifically “address the disclosure of [identifying ] information[.]” Thus, the logical conclusion of the majority’s argument is that the plain text of SDCL 19-19-503 will never control (because every communication necessarily is either identifying or nonidentifying and the statute does not specifically'address either subcategory). The better view is that the plain text of a statute cannot be avoided by simply appending adjectives.[11] *798 See Pith-Hart, 2016 S.D. 33, ¶ 10 n. 2, 878 N.W.2d at 410 n. 2 (“When the [author of a statute] uses inclusive language indicating a broad range of conduct,- it is not required to anticipate and individually address each subdivision of that conduct a party [or a majority of this Court] might imagine.”). Simply put, under the plain text of SDCL 19-19-503, a patient medical record is a confidential communication, regardless of the information it contains. Nothing in SDCL 19-19-503 supports the majority’s frustration of this statutorily defined privilege by imposing a fourth prerequisite to its application — i.e., that the content of the communication be personally identifying.[12]
[¶ 21.] Despite the plain text of SDCL 19-19-503, the majority relies on a number of decisions from other jurisdictions holding that the disclosure of redacted medical records does not violate the purposes of their respective physician-patient privileges. See supra ¶¶ 8-10.[13] The'majority claims that those decisions “employ the same rules of interpretation that we do[.]” Supra ¶ 10 n. 5. While some of those decisions purport to conduct a plain-text analysis, they do so only to the same extent that the majority does so today — which when reduced to its essence, is not at all. None of the decisions cited by the majority actually conducts a plain-text analysis of their respective privileges. Indeed, half of those decisions do not even quote the text of their corresponding statutes. See Bennett ex rel. Bennett v. Fieser, 152 F.R.D. 641 (D.Kan.1994); Ziegler v. Superior Court, 134 Ariz. 390, 656 P.2d 1251 (Ariz.Ct.App.1982); Snibbe v. Superior Court, 224 Cal.App.4th. 184, 168 Cal.Rptr.3d 548 (2014); Fischer v. Hartford Hosp., 31 Conn.. L. Rptr. 291 (Conn.Super.Ct.2002); State ex rel. Wilfong v. Schaeperkoetter, 933 S.W.2d 407 (Mo.1-996) (en banc).[14] *799 Therefore, these decisions are incongruous with this Court’s firmly established rules of statutory construction: “The intent of a statute is determined from what [its author] said, rather than what the courts think it should have said, and the court must confine itself to the language used.” Peters v. Great W. Bank, Inc., 2015 S.D. 4, ¶ 7, 859 N.W.2d 618, 621 (emphasis added) (quoting City of Rapid City v. Estes, 2011 S.D. 75, ¶ 12, 805 N.W.2d 714, 718); Hannon v. Weber, 2001 S.D. 146, ¶ 8, 638 N.W.2d 48, 50 (per curiam) (holding requirement of plain-text analysis applies equally to all statutes, whether authored by the Legislature or this Court).
[¶22.] The rule of the foregoing decisions should be rejected even if we ignore the plain text of SDCL 19-19-503. The cases relied on by the majority essentially conclude that disclosing third-party medical records does not violate the physician-patient privilege if the patient’s identity is not disclosed. However, South Dakota’s physician-patient privilege is not merely concerned with a patient’s privacy. It “expresses a long-standing policy to encourage uninhibited communication between a physician and his patient. It is a privilege that seeks to insure the free flow of health care, absent any fears on the patient’s part that anything he says might later be used against' him.” Maynard, 1997 S.D. 60, ¶ 8, 563 N.W.2d at 833 (emphasis added) (quoting D.K., 245 N.W.2d at 648).[15] Whether physician-patient communication is inhibited necessarily depends on the patient’s subjective assessment of the relative security of his or her identity. Thus, the purpose of the privilege may be undermined when a patient fears identification through the disclosure of his medical records — even if no such identification actually occurs.
[¶23.] Even under the new exception created by the majority, the facts of this case do not warrant disclosure. The probability that a patient will be identified could depend on a number of factors including the volume of data disclosed, the rarity of the patient’s particular combination of medical conditions,[16] the number of treating physicians in the area, and relat-edly, the population base served by those physicians. In Staley v. Northern Utah Healthcare Corp., 230 P.3d 1007 (Utah 2010), for example, the hospital at issue was one of several located in an area populated by approximately 900,000 people in addition to patients from neighboring states. Id. at 1013. In contrast, Sturgis has a population of approximately 6,700. The population of Meade County, in which Sturgis is located, has a total population of *800 only approximately 27,000.[17] So even if it is unlikely that a third-party patient in Salt Lake County, Utah, will be identified by his or her redacted medical records, the probability of identifying a similar patient in Sturgis, South Dakota, is much greater. As the majority correctly points out, the circuit court’s, order in this case does little to protect against identification by the uniqueness of a patient’s medical history.
[¶ 24.] The damage done by the majority today to the privacy interests of South Dakotans is not limited to those who seek medical cafe. The phrase confidential communication is uséd throughput SDCL chapter 19-19 to define a number of different privileges. In addition to the physician-patient privilege, this phrase is used to define the lawyer-client privilege (SDCL 19-19-502), the spousal privilege (SDCL 19-19-504), the religious privilege (SDCL 19-19-505), and the public-officer privilege (SDCL 19-19-508). Under the majority’s decision today, arguably a communication between an attorney and her client is now discoverable, as is the confession of a penitent made in confidence to a clergyman, if a third party can convince a judge that the identity of the communicator will not be discernible by such disclosure. Little is gained in this case by placing at risk the privacy of anyone who seeks medical care, legal advice, or spiritual guidance in South Dakota — Dr, Altstiel already provided the information Wipf ostensibly seeks in this case.[18] While little is gained, much is lost. Will this decision force the citizens of this state to seek medical treatment outside the boundaries of this state to protect'and maintain the privacy of their medical records? As Justice Brandéis observed (and the United States Supreme Court has repeatedly held): “[T]he right to be let alone [is] the most comprehensive of rights and the right most valued by civilized [persons].” Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandéis, J., dissenting), abrogated on other grounds, Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
[¶ 25.] To summarize, this Court’s past decisions firmly establish that patient medical records are confidential communications within the meaning of SDCL 19 — 19— 503. In order for redaction to remove the confidentiality of a medical record, it must create an intent — i.e., a fixed purpose — in the mind of the patient to actually disclose his or her medical information to a third person. The majority avoids this plain-text analysis in order to subscribe to the purpose-driven analysis of extrajurisdic-tional decisions that also avoid plain-text analysis. In doing so, the majority bypasses a fundamental rule of statutory construction and improperly adds another prerequisite to application of the privilege. Additionally, the majority fails to address the dual purpose of South Dakota’s physician-patient privilege: protecting the patient’s privacy and encouraging uninhibited communication between patient and physician. Finally, the majority fails to address the effect its decision would have on several other privileges, including the attorney-client privilege and the clergy-penitent privilege. For these reasons, I respectfully dissent.
*801 [¶ 26.] 2. Wipfs additional arguments
[¶ 27.] Because the majority creates a redacted-patient-records exception to SDCL 19-19-503, it does not address Wipfs additional arguments for permitting discovery. Wipf contends that the plain meaning of SDCL 19-19-503 is unreasonable because according to Wipf, it violates public policy. However, he does not cite any supporting authorities, and his argument on this point consists almost entirely of rhetorical questions. He asks:
If Altstiel’s interpretation is adopted, how could patients injured by the negligence of their doctor ever show that doctor is incompetent to perform a procedure if the patient cannot discover the results of other procedures? For example, if a doctor consistently performed a medical procedure incorrectly, the evidence from those other procedures showing the doctor violated the standard of care would be vital. .
Yet, SDCL 19-19-503 also “expresses a long-standing policy to encourage uninhibited communication between a physician and his patient,” Maynard, 1997 S.D. 60, ¶ 8, 563 N.W.2d at 833 (quoting D.K., 245 N.W.2d at 648). Thus, Wipf asks this Court to balance two competing public policies and decide which is more important. However, it is well settled that -“legislatures, and not the courts, are the proper place to determine the state’s public policy.” Wegleitner v. Sattler, 1998 S.D. 88, ¶ 25, 582 N.W.2d 688, 696. Therefore the decision whether to subordinate the physician-patient privilege to other policy concerns must be decided by the Legislature and not this Court.
[¶ 28,] Finally, Wipf essentially argues that HIPAA categorically “preempts [s]tate privilege laws that offer protection to de-identified medical records.” Wipf relies solely on In re Zyprexa Products Liability Litigation, 254 F.R.D, 50 (E.D.N.Y.2008). In that case, several states sought “damages, including reinl-bursement for Medicaid payments, stemming from the alleged unlawful marketing of Zyprexa, an atypical anti-psychotic drug manufactured by [Eli Lilly & Company].” Id. at 51. The cases were removed to federal courts and consolidated. Id. “As part - of its discovery demands, Lilly [sought] a sampling of medical records for Medicaid patients who used Zyprexa, as well as records for patients who took other atypical anti-psychotic drugs during the relevant time period.” Id. “[T]he States argue[d] that their respective physician-patient privilege laws prohibited] discovery of the patient medical records.” Id. at 52. After determining that each of the cases involved federal questions, the court held “that de-identified health information is not protected under HIPAA, and that, to the extent state privilege laws offer protection to de-identified medical records, HIPAA preempts those laws.” Id. at 54.
[¶ 29.] Although the Zyprexa court’s conclusion seems to support Wipfs argument that HIPAA preempts' South Dakota’s physician-patient privilege, this conclusion is difficult to reconcile with the provisions of HIPAA itself, as well as with the conclusion of the United States Court of Appeals for the Seventh Circuit in Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923 (7th Cir.2004). That case involved “a subpoena commanding Northwestern Memorial Hospital in Chicago to produce the medical records of certain patients [who had undergone] late-term-abortions at the-hospital using the controversial method known variously as ‘D & X’ (dilation and extraction) and ‘intact D & E’ (dilation and evacuation).” Id. at 924. The government sought the records for use in a lawsuit challenging the constitutionality of the Partial-Birth Abor *802 tion Ban Act of 2008, id., and therefore the case involved a federal question. The district court held that HIPAA supported application of Illinois’s physician-patient privilege and quashed the subpoena, and the government appealed. Id. at 925.
[¶ 30.] On appeal, the Seventh Circuit rejected the district court’s application of state-law privilege to a federal-question suit. Id. However, the court explicitly stated that a state “is free to enforce its more stringent medical-records privilege ... in suits in state court to enforce state law[.]” Id. The court concluded that HI-PAA “should be understood to ... create a procedure for obtaining authority to use medical records in litigation. Whether the records are actually admissible in evidence will depend among other things on whether they are privileged.” Id. at 925-26. Unlike Northwestern Memorial Hospital and Zyprexa, the present case does not involve a federal question — Wipfs malpractice claim against Appellants is purely a matter of South Dakota’s negligence law. Therefore, under Northwestern Memorial Hospital, HIPAA does not categorically preempt state privilege laws, and further analysis is necessary to determine whether South Dakota’s physician-patient privilege is preempted in this case.
[¶ 81.] Congress passed HIPAA in 1996 and charged' the Secretary .of the Department of Health and Human Services (the Secretary) to produce a regulatory > scheme to implement the Act. Among other things, HIPAA and the rules promulgated pursuant thereto produced the Privacy Rule, which. governs the use and disclosure of protected health information by covered entities. 45 C.F.R. § 164.502(a) (2015). HIPAA also includes a preemption provision:
[A] provision or requirement under this part, or a standard or implementation specification adopted or established under sections 1320d-l through 1320d-3 of this title, shall supersede any contrary provision of State law, including a provision of State law that requires medical or health plan records .(including billing information) to be maintained or transmitted in written rather than electronic form.
42 U.S.C.A. § 1320d-7(a)(l) (Westlaw through Pub.L. No. 114-248);- 45 C.F.R. § 160.203. However, there are several exceptions to this general preemption rule. 42 U.S.C.A. § 1320d~7(a)(2); 45 C.F.R. § 160.203. Notably, HIPAA does not preempt a contrary state law if it “relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under [the Privacy Rule].” 45 C.F.R. § 160.203(b).
[¶ 32.] In arguing for application of South Dakota’s physician-patient privilege, Appellants argue that the “more stringent” exception applies. This argument, however, skips a crucial analytical step: determining whether the state provision is contrary to HIPAA in the first place. As noted above, HIPAA preempts only contrary' state laws. Id. § 160.203; see also Standards for Privacy of Individually Identifiable Health Information, 64 Fed.Reg. 59,918, 59,996 (proposed Nov. 3, 1999) (to be codified at 45 C.F.R. pts. 160-64) (“The term ‘contrary ... is a precondition for any preemption analysis.... ”), 1999 WL 990734. The term contrary has a specific meaning under HIPAA:
Contrary, when used to compare a provision of State law to a standard, requirement, or implementation specification adopted under this subchapter, means:
(1) A covered entity or business associate would find it impossible to comply with both the State and Federal requirements; or
*803 (2) The provision of State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of part C of title XI of the Act, section 264 of Public Law 104-191, or sections 13400-13424 of Public Law 111-5, as applicable.
45 C.F.R. § 160.202. Therefore, a state law is not contrary to HIPAA — or preempted thereby — unless one of these definitions is met.
[¶ 33.] To determine whether it is impossible to comply with both state and federal requirements, it is necessary to compare what is required under both regulatory schemes. As explained above, South Dakota’s physician-patient privilege generally prohibits discovery of redacted, third-party medical records. Therefore, the only way that it would be impossible to comply with both state and federal requirements is if HIPAA requires the disclosure of redacted, third-party medical records in this case. The Privacy Rule requires a covered entity to' disclose protected health information in only two scenarios: (1) when requested, under certain circumstances, by the individual to whom the information pertains; or (2) when required by the Secretary “to investigate or determine the covered entity’s compliance with [the Privacy Rule].” Id. § 164.502(a)(2). All other uses or disclosures of protected health information authorized by HIPAA are permissive rather than mandatory. Id. § 164.502(a)(1). The present case does not fit within either of these two mandatory scenarios. Even if HIPAA authorizes Appellants to disclose the information Wipf seeks, HIPAA does not require that Appellants do so. Therefore, in this case, nondisclosure complies with both HIPAA and South Dakota’s physician-patient privilege. Consequently, the privilege is not preempted under the impossibility test.
[¶ 34.] Neither is South Dakota’s physician-patient privilege an obstacle to HI-PAA’s objectives. In remarking on the Privacy Rule, the Department has said: “In general, the rale that we are proposing would .create a federal floor of privacy protection, but would not supercede [sic] other applicable law that provide[s] greater protection to the confidentiality of health information.” Standards for Privacy of Individually Identifiable Health Information, 64 Fed.Reg. at 59,926. This statement is consistent with the operation of the Privacy Rule’s preemption provision. See 45 C.F.R. § 160.203(b) (preserving contrary state law when the law would provide greater protection than HIPAA). The plain text, of SDCL 19-19t-503 certainly furthers the objective of increasing protection for an individual’s medical privacy by restricting a third party’s access to the individual’s records beyond the restrictions imposed by HIPAA. Wipf makes no argument to the contrary. Therefore, South Dakota’s physician-patient privilege is not an obstacle to HIPAA’s objectives. Because neither definition of the term contrary is met, the privilege is not preempted by HIPAA.
Conclusion
[¶ 35.] The plain language of South Dakota’s physician-patient privilege indicates it generally applies to any communication between a patient and his or her physicians that is made for the purpose of diagnosis or treatment and not intended to be disclosed to a third party. We have expressly held that a patient medical record is a confidential communication within the meaning of SDCL 19-19-503. The application of SDCL 19-19-503 is not limited by the content of the communication. Consequently, the privilege bars discovery of any qualifying communication regardless of its content — i.e., even if the patient’s personal information has been re *804 moved. At this point, “[a]ny [redacted-records] exception to the physician-patient privilege is a matter for the [Legislature] to address.” Roe v. Planned Parenthood Sw. Ohio Region, 122 Ohio St.3d 399, 912 N.E.2d 61, 71 (2009); see also Pitt-Hart, 2016 S.D. 33, ¶ 10 n. 2, 878 N.W.2d at 410 n. 2. Therefore, I would reverse.
[¶ 36.] SEVERSON, Justice, joins this dissent.

. Prior to 2015, the physician-patient privilege was codified as SDCL 19-13-7 (Rule 503(b)).

. Although the majority acknowledges that these cases apply the privilege to patient medical records, it nevertheless claims that these eases "do not state that a physician’s records are 'confidential communications’ per se; and the text of the rule does not mention medical records — it only protects physician-patient confidential communications.” Supra ¶ 8 n. 3. As noted above, we have explicitly held that "treatment records are ... protected by the [physician-patient] privilege.” Shamburger, 380 N.W.2d at 662. Yet, the privilege only applies to confidential communications. SDCL 19-19-503. Therefore, contrary to the majority's claim, Shamburger- necessarily holds that patient medical records are confidential communications.

.The majority erroneously claims that "the dispositive question is whether anonymous, nonidentifying information ... of a doctor's complication rate is a physician-patient confidential communication.” Supra ¶ 8 n. 3. This claim — like much of the majority's opinion— relies on the false premise that the circuit court merely ordered the production of "information” from Dr. Altstiel's records. On the contrary, as Justice Severson correctly notes in his dissent, the court ordered Appellants to produce “all the medical records ... for each patient on which Dr. Terry L. Altstiel performed laparoscopic hernia repair surgery during the years 2009 through 2013.” Infra ¶ 42 (emphasis added).

. This argument simply assumes the conclusion it is meant to prove — that the content of the medical record is relevant to the application of the privilege.

. The majority’s argument can be replicated by appending essentially any adjective. For example, SDCL 19-19-503 does not specifically address the disclosure of electronically recorded medical records or medical records generated on a Tuesday. Are we to conclude, as the majority’s argument suggests, that such •records consequently are not protected under the plain text of SDCL 19-19-503? Of course not. Such a conclusion is insupportable because like the content of the medical record, *798 neither the format of the record nor the day of its creation is among the statutory requirements of SDCL 19-19-503.

. Although SDCL 19-19-503 originated as a court rule, this Court is not free to amend the statute at will. “It is not our task to revise or amend, via judicial opinions, statutes or court rules, or to 'liberally construe a statute or court rule ,.. where such action would do violence to the plain meaning of the statute under construction.’ ” Hannon v. Weber, 2001 S.D.146, ¶ 8, 638 N.W.2d 48, 50 (per curiam) (emphasis added) (quoting Sudbeck v. Dale Elec., Inc., 519 N.W.2d 63, 67 (S.D.1994)). Moreover, while the current version of the privilege may have originated as a court rule, the basis for the privilege is legislative and can be traced back to § 499(3) of Dakota Territory’s 1877 Revised Code of Civil Procedure.

. The majority claims the rule adhered to in its selection of cases is “the virtually unanimous rule” and that "courts do not agree with the dissents' view that the ‘plain meaning' of the words physician-patient 'confidential communication’ (or analogous words) in any physician-patient privilege rule includes information that cannot be traced to a patient[.]” Supra ¶ 10 n. 5. These claims are contradicted by the majority’s note four. As the majority acknowledges, a number of other jurisdictions have held that the disclosure of redacted medical records does violate their respective privileges. See Glassman v. St. Joseph. Hosp., 259 Ill.App.3d 730, 197 Ill.Dec. 727, 631 N.E.2d 1186, 1198 (1994); Johnson v. Detroit Med. Ctr., 291 Mich.App. 165, 804 N.W.2d 754, 756 (2010) ("The [physician-patient] privilege prohibits the disclosure of “ 'any information” acquired under the requisite circumstances,’ even if the patient’s identity is redacted.” (quoting Baker v. Oakwood Hosp. Corp., 239 Mich.App. 461, 608 N.W.2d 823, 830 (2000))); Roe v. Planned Parenthood Sw. Ohio Region, 122 Ohio St.3d 399, 912 N.E.2d 61, 72 (2009) ("Redaction of personal, identifying information does not remove the privileged status of the records."); In re Columbia Valley Reg’l Med. Ctr., 41 S.W.3d 797, 800 (Tex.App.2001) (“[Redaction of identifying information from nonparty medical records does not defeat the medical records privilege.”).

.Another decision relied on by the majority is based on a balancing test pitting the third *799 party’s privacy interest against the need to disclose the privileged information, see Baptist Mem’l Hosp.-Union Cty. v. Johnson, 754 So.2d 1165, 1171 (Miss.2000), implying that even the disclosure of records containing personally identifying information might be discoverable under certain circumstances.

. As noted above, South Dakota’s physician-patient privilege may be traced back to § 499(3) of Dakota Territory's 1877 Revised Code of Civil Procedure. "In promulgating Section 499, the legislature declared: 'There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate [.]’ ” Hogue v. Massa, 80 S.D. 319, 323, 123 N.W.2d 131, 133 (1963) (emphasis added).

. The majority remands "for the circuit court to consider whether additional safeguards will ensure patient anonymity.” Supra ¶ 12. Appellants indicated in their briefs to this Court that.Wipf’s discovery request involves the medical records of potentially hundreds of third-party patients. The circuit court will be required to individually review each record sought on a patient-by-patient basis. The irony is that in resisting the disclosure of their medical records, some of these third-party patients may actually be forced to divulge even more medical information than *800 was requested in order to prove a unique medical ''footprint.”

. This census data was obtained from the U.S. Census Bureau, http://www.census.gov/ quickfacts/table/PST045215/4662100,46093, 00 (last visited December 20, 2016).

. In Dr. Altstiel's responses to Wipf's first set of interrogatories, Dr. Altstiel stated that he has practiced medicine for 33 years, that he performed approximately 950 hernia repairs between April 2001 and July 2013, and that only two of those procedures (including Wipf’s case) resulted in a perforated bowel.